4-6-1-5-1-9 Sorkin v. Amsysco Good morning. My name is John Egbert. I, along with my associate Paul Byker, are representing the interests of Felix Sorkin in the case of Felix Sorkin v. Amsysco. Now, this is an appeal from the decision of the Southern District of Texas, an appeal from a finding of non-infringement as the result of a motion for summary judgment. In this case, the technology is relatively simple for a court that's burdened with dealing with pharmaceutical cases, with computer technology cases, business method patents. This case is for a cap, and it's a cap for a construction engineer. Very simple item, very easy to understand. In this case, and in this appeal, we're simply requesting an opportunity to be heard at the district court level, to present our arguments as to why there is infringement, and to rectify the problems associated with having these rights taken away from us by granting the motion for summary judgment. Now, the only issue at the district court level is where the retaining member on this cap was located. The only issue. And in finding non-infringement in granting the motion for summary judgment, the court said it finds non-infringement because the plaintiff did not dispute that the retaining member is located on a ledge in the void of the vessel member. This is incredible. If it was not disputed, why did the plaintiff file an extensive response to the motion for summary judgment? In this case, it was disputed because the plaintiff himself testified that the retaining member was affixed to an outer surface of the cap. Evidence was presented in the form of affidavits. Evidence was presented in the form of testimony of the defendant, the appellate Amsisco. There were drawings. There were photographs. There were photographic comparisons. There were references to the file router. There was a litany of items presented to the district court to support evidence of why the retaining member was affixed to the exterior outer surface of the vessel member. And in response to this, the court found that issue was undisputed. Our best assumption was that the expediency of the district court simply caused it to review the interpretation by the defendant, the appellate Amsisco, and ignore the responsive arguments by the plaintiff, Felix Sorkin. Additionally, we presented evidence to the district court in the form of an expert witness report, the report by Dr. Trejo. The expert witness report was provided to the court in order to supplement even all the other arguments. In view of the simple technology involved in this case, one can question as to even whether an expert was necessary. Why would it take a genius, an expert in the field of mechanical engineering, to look at such a simple cap? However, in the abundance of caution, Dr. Trejo was hired to render an opinion as to why there was an infringement, why the retaining member was attached to the exterior surface of the cap, and to present further evidence to the court. What happened here? The court disqualified our expert after reviewing his opinion. Now, we understand that this court can only reverse the disqualification of an expert based upon an abuse of discretion. But I would contend to this court that nothing could be more of an abuse of discretion than the disqualification of this expert on the grounds enunciated by Judge Ellison in the Southern District of Texas. The reason why the expert was disqualified was because the expert failed to conduct a thorough analysis in accordance with peer-reviewed standards on the rust inhibitor chemical contained within this cap. Judge said, you merely alluded to the fact there was a rust inhibitor. You failed to do a thorough analysis. You failed to scientifically test the rust inhibitor. And as a result, your opinion is disqualified. It doesn't meet the Dahlberg challenge. What's wrong with this picture? What's wrong with the picture is this is the very issue that was agreed to between the parties. Ansisco and Sorkin both agreed that there is no dispute in the case that rust inhibitor was contained within the cap. In fact, it even appears as a footnote on, I believe, the very first page of the motion for summary judgment. So Judge Ellison in the Southern District of Texas took the very issue that was undisputed and made it the basis for the disqualification of Dr. Trejo. He also made some allusions to there was an opinion as to the ultimate issue to be decided in the case. And he was disqualified because of that. We think that's been adequately addressed by this court in the symbol technology case previously. It's our position. Can I come back to the infringement aspect of the case for a second, please? I read what the district court did was he concluded that in the accused device, the retaining member was affixed in the void as opposed to being affixed around the exterior edge. That is correct. So doesn't that require you to sort of figure out what a void is? Well, upon reviewing the opinion, of course, you would need to know. In order to decide whether something's in the void or not in the void, you kind of have to look at the patent and see what the void is, right? Yes, of course. And wouldn't the void be the space in which the lubricant could be placed? That's absolutely correct. So if you could fill up, the void would include the area that you can fill up the top. If you fill a glass, like this glass here, if the void is what's inside the glass, you fill it all the way up to the top, right? That's the area for putting the lubricant. That is correct. And if you put a retaining member... If that's the case, then why isn't the retaining member that's permanently affixed, that I see on page 576 of the record where you've got the curly sealing cap and the laser sealing cap, it would look to me like the packing tape membrane is in the void. Because if you lifted that packing tape membrane up and put it on top of what's left of the edge, you'd have more room for lubricant. And with all due respect, how do you get the lubricant in that space if there is retaining film over the top of it? You fill it up. Like, the analogy would be that this glass that's sitting here now is the equivalent of figure 2 on page 576. And it's not full of lubricant, it's got a little gap there. So, I would fill it up to the lid, and then I would, if I took Saran Wrap or something and pulled it over the top and snapped it, right? That's correct. I would then have my entire void filled with, in this case, water. And the film would be attached to the exterior outer edge of that vessel. Right. But that's not what happened here. The accused device has cut a notch out of the side of the exterior structure and dropped its packing tape membrane down into the hole. No, that's not... It's very tricky and very difficult to crimp the edges, as the patent claims is one of its great benefits, is that because you can take it out over the edge and snap it off, it's easy to fix the packing tape membrane. But it would still be attached to the exterior outer edge of the vessel that contains the lubricant. If you're saying, what is above the lubricant, what is outside of that edge of your glass there, then it's quite clearly not attached above that space. But that cannot be the void because there cannot be rust inhibitor in there. Well, let me ask the same question. I have exactly the same concern as Judge Levender does. If you look at figure 2 on 576 and you took away the packing tape membrane that is depicted there, presumably you could add a little more rust inhibitor between the line that's marked now packing tape membrane and the top edge of the device. So you could add more. As if you took, let's say, some kind of a ring-shaped device and put it on top of the glass, you could add some more water and then you could put tape on the top of that. That would be like more, right? Right, you'd add a little more. So why isn't that a distinction that... And unquestionably, that is true. It's just not done. You could fill it up to that upper level and then it would be the void. You're defining the void as only that section that's actually filled with rust inhibitor? Yes, sir. So that if you had a packing tape membrane that was halfway down on figure 2, you would say, well, the void is only the portion below the halfway point. That is correct. But in view of the judge's Markman ruling, it truly wouldn't be along the exterior outer edge. It would be above the void, of course, but it wouldn't be an infringement because it would not be on the exterior outer edge of anything. It would be the interior of it. And so that is the distinction that we're pointing out here. If you dropped the packing tape membrane that we see in figure 2, assume the notch on the exterior side was cut a little deeper so it was twice as far down into the void as is currently depicted in that picture. You would still claim that that constitution is right there? Possibly. I'm having a hard time visualizing. We all know what prior art was, right? The very tech. I'm not sure we understand what the prior art is. The court felt it understood what the prior art was. I didn't think there was any dispute that the prior art, the barotech industry drawing, had its grease membrane and the membrane was sort of tucked down into the void. At first, it was never a membrane. It was like in the shape of a tiddlywink with a star-shaped passage. There's a grease membrane on 1383. Yeah. There's an O ring that goes around the grease membrane. I believe that. I've got an F ring. Oh, that is not the prior art. That is actually the original product, I believe, sold by Ancisco. The prior art is actually this very odd snap-together type of thing where you have, I'll call it a tiddlywink, overlying the void, overlying the vessel. And it appears to be snapped into position over a different piece that ultimately is snapped onto the anchor. And that is the most sense that I can make out of the drawings that were ever provided on the prior art. May it please the Court. I just have one brief comment. I agree with counsel that this appeal rises and falls on the issue of the attachment of the membrane to the cap. During prosecution, the applicant, in arguing to get around the Veritech reference, stated, returning to the Veritech brochure, it is clear that the membrane is within the void, defined by the cap, and on the recessed area, and not on the separate and distinctive outer edge. That's in 1206 of the appendix. He continued, therefore, comparing the… Why is that so? I'm sorry, Your Honor. If you look at the celebrated figure 2 we were talking about earlier on page 8576, if you look at figure 1 for starters on 576, figure 1 clearly shows you're packing a membrane, you're retaining a membrane, right? Sitting on top of the outer edge, right? Yes, Your Honor. No. Figure 2, what it looks like is somebody just cut a notch out of the exterior edge, right? Yes, Your Honor. They didn't say, this is void. They said, we're just a fine-shaped exterior edge. There's nothing in the claim that requires the exterior edge to be planar, right? There is no planar term. Right. Is it conceivably possible if you have a jagged edge in one? Yes. Yes. Right? Well, Your Honor… I've got a big question to say, well, excuse me, is this structure that's been altered in figure 2 by cutting a little notch out, is that still an exterior outer edge? Or, instead, it's only the piece that survived the cutting, the chopping off the edge, and then the volume becomes the void. So, now, is that a fact question? Or is that a question of law and claim construction? No, Your Honor. I believe it's a question of law and claim construction. And that's… Tried to define void. I didn't see that anywhere. In the order itself? Yeah. Your Honor, the prosecution history, the examiner, excuse me, the patentee, stated clearly the void is defined by the cap. So, the void being defined by the cap, he could have said that the void is defined by what's called a routine. What are you saying? Do you have a cipher? On the appendix at 1206. Thank you. I'm going to go check where I put this thing. Tell me when you're done. I will, Your Honor. Yes. About three-quarters of the way down the page, Your Honor, the applicant states, moreover, returning to the document, it is clear that the membrane is within the void defined by the cap and on the recess area. And what's he talking about? This is a description of the Veritec cap. Yeah, sure. So, if you even, moving on. In Veritec, right? Yes. You've got the membrane stuck, you know, like halfway down the pipe, if you will. Yes. So, that's probably a no-brainer. Sure, that's within, right? Yes. And that's called, there's a ledge, a shoulder, if you will, down inside of the structure, and that's where they put the membrane. Yes, Your Honor. So, I grant you that you could easily say that that membrane is within the void. Yes. The problem is that when you bring the membrane up to where it's a millimeter below the edge because you just chopped a little piece out, how can you know that you're still talking void as opposed to an altered exterior edge? Well, Your Honor, by using your earlier example of the water in the glass, if we were to bring that level down, it's still within the void, and if there was any void left that's defined by the cap that is capable of holding more rust inhibitor, that is the linchpin of this fact, was that by raising the membrane up, it maximized the amount of rust inhibitor. Your Honor has appreciated the fact that you can have a membrane that's way down, halfway down the pipe and one that's very close to the top, and he just sort of said, well, it's either inside or it's outside, the game's over, you're not going to have a sliding steel because your adversary couldn't exactly tell him where the line was, right? But I didn't know that he was, I thought he was having that analysis as part of his infringement analysis, not as part of claim construction. My question is, why couldn't a reasonable juror look at Figure 576 and decide that the piece of the structure upon which the packing tape membrane is sitting is actually part of the exterior edge? Because, Your Honor, a void only has so much volume, and if you detract or deduct from that volume in any degree, especially in light of this patent's plain point of knowledge, it maximizes the amount of rust inhibitor. Would it matter if you were talking a micron or an inch? That was the question I was asking, and your answer would be yes. If you leave a micron unfilled in the void, then you're in the void. Yes, Your Honor, you have less volume than you would if you maximized it by not having that ledge in the void defined by the count. So the district court was correct. Can I finish with your answer? Yes, Your Honor. I just wanted to check with you. Your opposing counsel said, I believe, that the figure on 1383, which references the Veritech Industries device, is not the prior art. Do you take issue with that? I do, Your Honor. It was submitted in a supplemental information disclosure after the application was filed and before any action was sent back by the patent attorney. So you don't agree that that's a modification of the Veritech, what we've been calling the Veritech prior art, that is, in fact, the actual prior art device? It is the prior art device, Your Honor. I will find out if your opposing counsel continues to take that. And this was created at a time that Mr. Sorkin and the Hayes boys were hand-in-hand, right? That's correct, Your Honor. They were both owners. And then at some later stage in the game, Mr. Sorkin made what he felt was his improvement upon what he felt was bad. That's correct, Your Honor. And unless the court has any other questions for me, I will cede my time. Thank you. Thank you. With respect to the issue that Judge Bryson brought up, I am in error. What appears on 1383 would be considered the prior art. I was thinking of something from the brief itself, but that actually is the prior art. And if you look at it, you really, really, really have a hard time figuring out how that thing is assembled in one way or another. Now, what you have just heard here is, at least in the opinion of the appellant, a genuine issue of material fact. Our goal is to get this court to remand the case back to the district courts so that at least some jury can make a decision. Is that surface on which the film is attached an exterior or outer surface? We certainly have support in our brief for the fact that that is an exterior or outer surface. Intuitively, it makes sense that that's an exterior or outer surface, because if you look at your glass, look at the upper edge, and if you put a film over the top of that, that would be the exterior or outer edge of your glass, regardless of whether your glass had a big handle extending off to the side of it or a rim that extended in an artful manner outwardly therefrom. You're still attaching the film to the upper edge of the glass, the outer edge of the glass. The problem I have with that is that if you look again at our two figures on 576, once you've created this ledge, suppose you have a series. In fact, you do have another ledge on figure two down another, probably another centimeter. Now, suppose the membrane went across there. Would it still be attached to the exterior or outer edge? I would have more difficulty answering that question because I don't know that that's an outer edge. Why would that not be an outer edge, but the place where it is attached is an outer edge? It kind of looks a little tapered downwardly. Well, suppose it was. Let's assume it's not tapered down, but it's actually at a 90-degree angle to the inner portion of the inside of the cap. It would clearly be our position as long as there was the rust inhibitor in that section. Yes, that would be an exterior or outer edge. And no matter how far down that ledge was found? That is correct, yes. And why isn't that verite? Well, as a matter of explanation, it's my understanding, and I believe it can be based on some testimony, that the nature of this earlier verite brochure had, we'll call it the tiddlywink, mounted in the middle of the lubricant. There was lubricant on one side, lubricant on the other side, and that was necessary because when you put the cap onto the anchor, it tends to hang up on the edge of the tendon that goes through the anchor. Unless you lubricate the side somewhat, you will get a hang-up that occurs. So in this prior art verite publication, the void extended out further because you actually had lubricant on both sides of the tiddlywink. It was important to keep a large volume of lubricant. Lubricant on both sides of the tiddlywink wasn't the basis on which Mr. Shorkin explained away the prior art verite, right? The section that your adversary just read you was. Well, in a sense it was. It's just down there. It's at a lower place. It was simply stated as being just down there. But it didn't say anything about having lubricant on both sides. But it did say that it covered the void that contained the rust inhibitor. If it covered the void that contained the rust inhibitor, the argument would be that there wasn't any rust inhibitor outside on the other side that it contained. I respectfully contend that this shows why there's a genuine issue of material fact. Thank you very much.